IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HEATHER A. KOLBE,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 23-1482-PJM |
| **NSR MARTS, INC.,** | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

Heather A. Kolbe has sued her former employer, NSR Marts, Inc. ("NSR"), for alleged violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and intentional infliction of emotional distress. NSR has filed a Motion to Dismiss (ECF No. 5), which has been fully briefed by both sides. Based on the parties' submissions (ECF Nos. 5, 9, 12), the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons that follow, the Court **GRANTS** the Motion and **DISMISSES WITH PREJUDICE** Kolbe's claim for intentional infliction of emotional distress and portions of her FMLA claim. The Court **DISMISSES WITHOUT PREJUDICE** Kolbe's FMLA interference claim based on NSR's alleged misrepresentations of her rights and responsibilities under the Act and will grant her twenty (20) days to file an amended complaint that addresses the Court's concerns as set forth below.

## BACKGROUND

From August 17, 2020 until August 10, 2022, NSR employed Kolbe as an assistant manager at its Accokeek, Maryland location. ECF No. 2 ¶¶ 7, 18, 29.

On September 18, 2021, Kolbe was involved in a car accident that resulted in injuries that affected her ability to perform some job functions. *Id.* ¶ 8. That same day, she requested FMLA leave from NSR, which granted her request. *Id.* ¶ 9-11.

On October 14, 2021, Kolbe provided a medical certification to NSR explaining that she could return to work but only with "light duty restrictions." *Id.* ¶ 13. She requested reinstatement with those restrictions. *Id.* ¶ 14. She says that the requested restrictions "presented no undue burden" for NSR, but that NSR nevertheless refused to reinstate her with those restrictions, claiming that "no light duty work was available." *Id.* ¶¶ 14-15.

At some point thereafter, Kolbe observed another NSR employee with a "sling around her arm." *Id.* ¶ 16. This was the same accommodation that Kolbe says she requested. *Id.* She also alleges that "during her employer-approved medical leave," NSR offered her job "to at least one" of her coworkers. *Id.* ¶ 18.

Kolbe says that she communicated with NSR "bi-weekly" about her recovery and her anticipated return to work, but that during her FMLA leave and for several months thereafter, NSR "continued to accept updates" about her recovery while at the same time "refusing to provide information regarding her employment status and return to service," instead offering only "vague assurances" about her return. *Id.* ¶¶ 17, 19, 22-23. Kolbe characterizes these communications as NSR "actively misleading" her as to her employment status, and says that at one point during her leave, NSR offered to transfer her to its Charlotte Hall, Maryland location. *Id.* ¶¶ 20, 23.

NSR notified Kolbe of her termination on August 10, 2022.[1] *Id.* ¶ 22. Kolbe says that NSR invited her to re-apply to other open positions when it terminated her employment. *Id.*

---

[1] In her Complaint, Kolbe does not indicate what she believes was the reason for her termination, *see* ECF No. 2, but NSR suggests in its Motion to Dismiss that the reason behind Kolbe's termination was her failure to report to work for "[n]early eight (8) months after the expiration of her FMLA leave," during which NSR received "no information that Plaintiff could return to her job without light duty restrictions." ECF No. 5-1 at 3.

Kolbe's Complaint proceeds in two counts against NSR: violation of the FMLA (Count I) and intentional infliction of emotional distress (Count II). She seeks $500,000 in damages, which includes the wages she claims she would have received had she been reinstated ($38,000), plus an amount attributable to her IIED claim ($472,867.26), plus costs for the mental health counseling that was allegedly necessitated by NSR's conduct ($4,667.26). She also seeks attorney's fees and costs.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the facts alleged allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is properly dismissed where, even if true, the allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The court must examine the complaint as a whole, accept all well-pled facts as true, and must construe the factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

In its Motion, NSR contends that Kolbe has failed to state a claim that it violated the FMLA or intentionally inflicted emotional distress upon her.

### I.   FMLA Claim

The FMLA entitles qualified employees to take up to twelve weeks of leave if they are afflicted with a serious health condition and provides that those employees are to be "restored . . . to the position of employment held by the employee when the leave commenced," or to "an

3

equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). The FMLA makes it unlawful for employers to either (1) interfere with an employee's exercise of their rights under the Act or (2) discharge, discriminate, or retaliate against an employee for exercising those rights. *Id.* § 2615(a); *see Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006).

NSR argues that Kolbe's Complaint fails to specify whether she pursues a claim for FMLA interference or retaliation. ECF No. 5-1 at 4. In either case, NSR contends that Kolbe's Complaint fails to state a claim under the FMLA. *See id.* In her opposition, Kolbe frames her FMLA claim exclusively through the lens of retaliation. *See* ECF No. 9-1. Although the Court could treat Kolbe's failure to address NSR's interference arguments as an abandonment of any interference claim, *see Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010), the Court will not do so and instead will consider whether she has sufficiently pled either an interference or retaliation claim.

## A. FMLA Interference

"To make out an 'interference' claim under the FMLA, an employee must . . . demonstrate that (1) [s]he is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).

The parties do not dispute that Kolbe was entitled to FMLA benefits. Nor do they dispute that Kolbe did, in fact, take FMLA leave, so that any interference by NSR cannot be based on the denial of such leave. *See id.* Instead, the Court's inquiry is guided by the purpose of an interference claim, which is "'to permit a court to inquire into matters such as whether an employee would have exercised his or her FMLA rights in the absence of the employer's actions.'" *Id.* (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

4

Kolbe's Complaint includes three allegations that, charitably, may be read as claiming interference. These are based on NSR's supposed (1) failure to accommodate her request for light-duty restrictions; (2) failure to reinstate her upon the expiration of her FMLA leave when she required light-duty restrictions; and (3) continued correspondence with Kolbe about her recovery, upon which she claims she reasonably relied to her detriment instead of returning to work at the end of her twelve weeks of leave. As will be explained, the first two of these three allegations do not state a claim for FMLA interference as a matter of law. While as currently pled, the third allegation fails to state an interference claim, unlike the first two, Kolbe's pleading deficiencies could conceivably be cured by an amended complaint.

First, Kolbe alleges that NSR violated her FMLA rights by failing to accommodate her request for light-duty accommodations upon her return to work. The Court rejects this claim as a matter of law. The FMLA confers no right or benefit on an employee to be accommodated by an employer upon his or her reinstatement. Instead, the Act entitles a qualified employee to be reinstated to the same position he or she held prior to leave, or to an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). Indeed, the Act's implementing regulations suggest that an employee who cannot perform "an essential function" of his or her job because of a serious health condition has no right to restoration to their original position or an equivalent one. *See* 29 C.F.R. § 825.216(c). Although an employer would be obligated to provide reasonable accommodations under the Americans with Disabilities Act ("ADA") or other laws,[2] an employer is not required to do so under

---

[2] As for failure to accommodate under the ADA, "'reasonable accommodations' may comprise 'job restructuring, part-time or modified work schedules[.]'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344-45 (4th Cir. 2013) (quoting 42 U.S.C. § 12111(9)(B)). To plead a claim for failure to accommodate under the ADA, Kolbe would have to plausibly allege that: (1) she "was an individual who had a disability within the meaning of the statute"; (2) her employer "had notice of [her] disability"; (3) she could "perform the essential functions" of her job "with reasonable accommodations"; and (4) her employer "refused to make such accommodations." *Id.* at 345. Kolbe's Complaint does not currently

the FMLA. *See id.* Simply put, NSR's failure to accommodate Kolbe's request for light-duty restrictions is irrelevant to her FMLA rights, as is NSR's supposed inconsistent conduct in providing such accommodations to another NSR employee but not Kolbe. *See Ensor v. Jenkins*, No. ELH-20-1266, 2022 U.S. Dist. LEXIS 41701, at *59-60 (D. Md. Mar. 8, 2022) (collecting cases). Therefore, the Court will dismiss with prejudice Kolbe's FMLA claim to the extent that it is premised on a failure to accommodate.

Second, Kolbe alleges that NSR failed to reinstate her to her previously held position of assistant manager upon the expiration of her twelve-week leave. This can be understood as an alleged interference with her right to reinstatement under 29 U.S.C. § 2614(a)(1)(A). However, the Complaint fails to allege that Kolbe sought to be reinstated in her assistant manager position at the end of her FMLA leave. At most, Kolbe says she informed NSR mid-way through her leave that she could return with light-work accommodations, and that she continued to provide updates about her recovery. She does not allege that she was physically capable performing all the essential functions of her job upon reinstatement after twelve weeks of leave. *See* 29 C.F.R. § 825.216(c). To the contrary, she seems to say she was not capable of doing so.[3] NSR was under no obligation to reinstate Kolbe at the close of twelve weeks of leave if she was not capable of performing all the essential functions of her job. *See id.*; *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 975 (E.D. Va. 2012) ("[A]n employer does not violate the FMLA when it fails to reinstate an employee who is physically unable to return to work at the conclusion of the twelve-week period of

---

include a count for a violation of the ADA. *See* ECF No. 2. But even now, she fails to identify the "essential functions" of her job. Accordingly, the Complaint in its current form fails to state an ADA claim as well.

[3] *See, e.g.*, ECF No. 2 ¶ 13 ("On October 14, 2021, Ms. Kolbe presented the Defendant with medical certification clearing her to work with light duty restrictions); *id.* ¶ 15 ("Throughout Ms. Kolbe's medical leave, *and for several months thereafter*, Defendant continued to accept updates regarding Ms. Kolbe's recovery. . .") (emphasis added).

FMLA leave.").[4]  Given Kolbe's failure to allege that she was capable of returning to work at the end of twelve weeks, and the somewhat conflicting implication that she was unable to return at that time, the Court concludes that the Complaint fails to state a claim for interference with her right to reinstatement.  Accordingly, the Court will dismiss with prejudice Kolbe's FMLA interference claim to the extent that it is premised on NSR's failure to reinstate her at the end of her twelve weeks of leave.

Finally, Kolbe alleges that NSR interfered with her FMLA rights by continuing to correspond with her about her return after her FMLA leave expired but failed to inform her that she could be terminated if she did not return after the twelve weeks provided by the Act.  In her opposition, Kolbe argues that NSR should be equitably estopped from denying that it owed her any obligations under the FMLA after her twelve weeks of leave because she reasonably and detrimentally relied on NSR's continued correspondence about her return to work.

In general, equitable estoppel "arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that misrepresentation." *Bakery & Confectionary Union and Indus. Intern. Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997) (citation omitted).  The Fourth Circuit has not yet applied equitable estoppel in the FMLA context. *See Yaskowsky v. Phantom Eagle, LLC*, No. 4:19-cv-9, 2020 U.S. Dist. LEXIS 27929, at *26-27 (E.D. Va. Feb. 18, 2020).[5]  But two district courts within this Circuit

---

[4] Kolbe's Complaint appears to suggest that NSR interfered with her FMLA rights when it offered her position to another NSR employee while she was on leave. ECF No. 2 ¶ 18. That argument, however, is foreclosed by the Fourth Circuit's decision in *Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 187 (4th Cir. 2017). In *Waag*, the court rejected an argument that an employer interferes with FMLA rights when it hires a replacement for an employee who is on FMLA leave. *See id.*  The court held that the text of the FMLA did not confer an absolute right to reinstatement in the same position as held by the employee at the commencement of his or her leave, but only guaranteed reinstatement to a position "equivalent to [the] original, pre-leave job." *Id.* (citing 29 U.S.C. § 2614(a)(1)). Under *Waag* and the text of the FMLA, NSR could not have interfered with Kolbe's FMLA rights when it merely *offered* her position to another employee, even if the offer did occur.

[5] In a recent unpublished decision, the Fourth Circuit rejected a plaintiff's argument for equitable estoppel under the FMLA because the facts presented did not warrant application of the doctrine. *See Phillips v. New Millennium Bldg. Sys.*, No. 20-2095, 2022 U.S. App. LEXIS 16875, at *2-3 (4th Cir. June 17, 2022).

7

have. *See id.* at \*26-27; *Blankenship v. Buchanan Gen. Hosp.*, 999 F. Supp. 832, 838 (W.D. Va. 1998).

In *Yaskowsky*, the plaintiff was told by the defendant to return to work "on a date after his FMLA protected leave period had expired, but he was fired when he did so." 2020 U.S. Dist. LEXIS 27929, at \*27. Further, the plaintiff "originally requested only twelve weeks of leave and he only agreed to a longer period" after the defendant denied his request and presented a longer, alternative period of leave. *Id.* at \*27-28. The court found that the defendant had "failed to notify" the plaintiff about his FMLA rights and his responsibilities, so the plaintiff was unaware that he was entitled to only twelve weeks of leave. *Id.* The court then applied equitable estoppel after drawing the inference that the plaintiff would have returned to work within the twelve-week period but for the defendant's conduct, which he reasonably relied upon to his detriment. *Id.* at \*29.

In *Blankenship*, the defendant told the plaintiff that her FMLA leave ended one week after the true date of expiration, then fired her when she returned on the date designated by the defendant. *See* 999 F.3d at 838-39. The court found equitable estoppel "well-suited" to the plaintiff's claims because she had reasonably relied on the defendant's misrepresentation to her detriment. *Id.* at 838.

As it stands, Kolbe's Complaint does not allege that NSR made any specific misrepresentation about her rights and responsibilities under the FMLA such as those in *Yaskowsky* or *Blankenship*. Instead, Kolbe's argument is premised on NSR's alleged acceptance of "updates regarding [her] recovery," its "refus[al] to provide reliable information regarding her employment status and return to service," and its supposed delay in informing Kolbe "of any credible determination of her employment status for months" without providing a "credible reason for their delay." ECF No. 2 ¶¶ 19, 21, 23. These allegations, even when read in Kolbe's favor, are a far cry from the misrepresentations made by the defendants in *Yaskowsky* and *Blankenship*. On the facts as pled, the Court is unable to discern what alleged misrepresentations NSR supposedly made to

8

Kolbe about her FMLA leave, when it made those representations, whether it was reasonable for Kolbe to rely on those representations, or whether she in fact relied on those representations to her detriment. The Court is therefore unable, at this juncture, to conclude whether application of equitable estoppel may be appropriate here.[6] For those same reasons, the Court finds that Kolbe's Complaint, as currently pled, does not state a claim for FMLA interference based on NSR's alleged continued communications with her after the expiration of her leave.[7]

To summarize: Kolbe's FMLA interference claims fail as a matter of law with respect to NSR's alleged failure to accommodate her request for light-duty restrictions and to NSR's alleged failure to reinstate her when she was unable to perform all the essential functions of her job. The FMLA does not entitle an employee to accommodations or reinstatement when she is physically unable to perform her duties after the exhaustion of her FMLA leave. Kolbe's FMLA claim—to the extent it is based on these alleged failures by NSR—will be dismissed with prejudice.

Kolbe's Complaint also fails to state a claim for FMLA interference to the extent that it is based on supposed misrepresentations by NSR about Kolbe's rights and responsibilities under the Act. That said, Kolbe may still be able to state an FMLA interference claim if, in an amended complaint, she can supply sufficient detail for the Court to be able to determine that NSR may have misrepresented Kolbe's duty to return to work at the close of twelve weeks of leave, and that Kolbe

---

[6] To the extent that Kolbe's argument suggests that NSR's failure to require her to return to work at the end of her twelve weeks of leave extended the statutory period during which NSR was required to restore her to her position, the Fourth Circuit has viewed such arguments with skepticism. *See Sabouri-Yazdi v. Red Coats, Inc.*, 751 F. App'x 389, 392 (4th Cir. 2018).

[7] Kolbe's opposition brief contains statements that provide slightly more specificity about NSR's conduct than her Complaint: "Ms. Kolbe continued to inquire about her return from leave, made every attempt to return to work on light duty, continued to send medical certification to NSR. The Defendant continued to engage in communication regarding Ms. Kolbe's return to work after Ms. Kolbe's leave was exhausted. NSR provided no notice or documentation of Ms. Kolbe's need to return to work in December 2021." ECF No. 9-1 at 6-7. These details are not pled in the Complaint. But even if they were, the Court could not conclude that Kolbe has stated a claim for FMLA interference, because many critical questions remain unanswered. For example, when did Kolbe inquire about her return? Was she capable of returning to her job—without light-duty accommodations—at the termination of her FMLA leave? If not, when was she physically well enough to perform all the essential functions of her job? What were the essential functions of her job? And for that matter, what injuries did she suffer in the car accident?

reasonably relied on those misrepresentations to her detriment. The Court therefore dismisses without prejudice this FMLA interference claim and will grant Kolbe twenty (20) days to file an amended complaint addressing these concerns.

### B.    FMLA Retaliation

To plead a claim for FMLA retaliation, Kolbe must present sufficient facts to show that "(1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two events." *Adams*, 789 F.3d at 429 (internal quotation marks omitted). The court may infer causation "based on the temporal proximity between the protected activity and the materially adverse action." *Onwudiwe v. Becerra*, No. TDC-21-1620, 2023 U.S. Dist. LEXIS 146181, at *42 (D. Md. Aug. 18, 2023). Unlike an interference claim, an employer's intent is relevant to FMLA retaliation claims. *See Waag*, 857 F.3d at 191.

In her opposition, Kolbe lists a number of elements she believes satisfy a retaliation claim. ECF No. 9-1 at 4-5. She argues that she engaged in a protected activity by taking medical leave for a serious medical condition. She also appears to contend that NSR took adverse actions against her when it offered her position "to at least one other NSR employee" while Kolbe was on leave, and when it refused Kolbe's request for light-duty accommodations while making those same accommodations for a different employee. *See id.*

This argument suffers from several fatal flaws. To begin, none of these acts attributed to NSR, even if true, constitutes a cognizable adverse employment action. The Fourth Circuit has defined an adverse employment action as one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*,

10

650 F.3d 321, 337 (4th Cir. 2011) (citation omitted).[8]  Kolbe's Complaint does not explain why or how NSR's alleged offer of her position to another employee while she was on leave "significant[ly] change[d]" her employment status or otherwise altered the terms and conditions of her employment. *Id.*  As for NSR's alleged denial of her request for light-duty accommodations while permitting another employee to work with such accommodations, as the Court has already explained, *supra*, the FMLA does not confer a right to accommodations.  Absent an entitlement to light-duty accommodations provided to her under the FMLA (or perhaps by NSR's employment policies), any denial of those accommodations would not constitute an adverse action because such a denial would not alter, significantly or otherwise, the terms and conditions of Kolbe's employment. *See Hoyle*, 650 F.3d at 337.

Although not identified as such in Kolbe's Complaint or in her opposition brief, the Court notes that one action allegedly taken by NSR might qualify as an adverse employment action; i.e., terminating Kolbe's employment on August 10, 2022. *See id.* (identifying termination as an adverse employment action).  But that does not help Kolbe's case as it stands.  The Complaint does not plausibly allege a causal connection between her protected activity (taking FMLA leave) and the adverse action (her termination).  Nor is there any indication of temporal proximity between the two events (taking of leave in September 2021 and termination in August 2022) from which the Court could reasonably infer causation. *See Onwudiwe*, 2023 U.S. Dist. LEXIS 146181, at *42.  Equally problematic is the absence of any other facts from which the Court could infer that NSR terminated her with retaliatory intent.

In sum, Kolbe's Complaint fails to state a claim for FMLA retaliation, and the Court will dismiss that claim with prejudice.

---

[8] Although Hoyle's definition of an adverse employment action arose under Title VII and not the FMLA, the analysis for retaliation claims is analogous under both statutes. *See Yashenko*, 446 F.3d at 551.

## II.     Intentional Infliction of Emotional Distress

In Maryland, a claim for intentional infliction of emotional distress consists of four elements:

(1) the defendant's conduct must be intentional or reckless; (2) the conduct must be extreme or

outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional

distress suffered by the plaintiff; and (4) the emotional distress must be severe. *See Harris v. Jones*,

281 Md. 560, 566-67 (1977). These claims are rarely successful. *See Haines v. Vogel*, 250 Md.

App. 209, 230 (2021).

The Court need not analyze Kolbe's Complaint with respect to all four elements because she

clearly fails to meet the first—establishing that NSR's conduct was intentional or reckless. To

satisfy this element, Kolbe would have to have pled facts demonstrating that NSR *actually intended*

for its conduct to inflict severe emotional distress or disregarded the substantial certainty that its

conduct would result in such distress. *See Harris*, 281 Md. at 567; *Haines*, 250 Md. App. at 229.[9]

Kolbe attempts to argue that her Complaint contains allegations of NSR's intentional

conduct or recklessness. She contends, for example, that the Court can infer NSR's malicious intent

---

[9] Kolbe's Complaint fails to plausibly allege other elements as well. For example, NSR's conduct, even if proved, is nowhere near extreme or outrageous enough to satisfy a claim for intentional infliction of emotional distress. To meet the "extreme and outrageous" element of the claim, a defendant's conduct must "go beyond all possible bounds of decency," such that it is "regarded as atrocious and utterly intolerable in a civilized community." *Lasater v. Guttmann*, 194 Md. App. 431, 448 (2010). Kolbe contends that this Court previously determined that a "simple allegation that an employer's outrageous conduct led to severe emotional distress" satisfied these requirements in *Russell v. Russel Motor Cars, Inc.*, 28 F. Supp. 3d 414, 420 (D. Md. 2014). ECF No. 9-1 at 7. This is a mischaracterization of *Russell*. In that case, Judge Grimm found that a *pro se* complaint plausibly alleged the "extreme and outrageous" element where it could be inferred that the defendant "knowingly and intentionally engaged in a persistent course of offensive, sexist, and dehumanizing behavior and made continuous crude sexual comments that a jury could find go beyond what is tolerable in a civilized community—and particularly in a civilized workplace." *Russell*, 28 F. Supp. 3d at 420. This behavior included, among other things: insisting that the plaintiff, a female, "remove her coat" during her job interview if she wanted to be hired; asking if the plaintiff had "always been built that way" with reference to "[her] breast and [her] ass"; refusing to call female coworkers by their full names, opting instead to call them "sweetie, baby, darling, sunshine, gorgeous, etc."; and making "a joke about oral sex" after the defendant learned that the plaintiff had reported his behavior. *Id.* at 416. Those allegations are different in kind, as well as degree, from those alleged by Kolbe. NSR's behavior is not comparable to the defendant's in *Russell*. The plaintiff in *Russell* also proceeded *pro se*, and thus was afforded a degree of leniency inapplicable here because Kolbe is represented. *See id.* ("[T]his Court is required to construe *pro se* pleadings liberally. Such pleadings are held to a less stringent standard than those drafted by attorneys. This Court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim.").

from its actions when it (a) withheld a determination of her employment status for nearly one year despite her efforts to report her recovery status and return to work; (b) refused to provide a reasonable determination on her employment status for nearly a year; (c) actively recruited her replacement during her leave; and (d) provided her with vague information about her employment status, including a possible transfer to NSR's Charlotte Hall location after Kolbe's FMLA leave expired. *See* ECF No. 9-1 at 7.

The Court is unpersuaded. As a matter of law, even when the facts are viewed in the light most favorable to Kolbe, there is no plausible basis for inferring that NSR *intended* to cause her severe emotional distress when it allegedly failed to clarify Kolbe's employment status, sought to hire a replacement, or offered to transfer her to a different location. Kolbe engages in pure speculation, which the Court need not countenance, even when considering a motion to dismiss. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Kolbe has failed to state a claim for intentional infliction of emotional distress, which will be dismissed with prejudice.

## CONCLUSION

In conclusion, the Court will **ORDER** that:

1. Defendant's Motion to Dismiss (ECF No. 5) is **GRANTED**;

2. With respect to Count I, the following claims are **DISMISSED WITH PREJUDICE**;

    a. Plaintiff's claim for FMLA interference based on Defendant's failure to accommodate her request for "light duty restrictions";

    b. Plaintiff's claim for FMLA interference based on Defendant's failure to reinstate her after twelve weeks of leave; and

    c. Plaintiff's claim for FMLA retaliation.

3. With respect to Count I, the following claim is **DISMISSED WITHOUT PREJUDICE**:

    a. Plaintiff's claim of FMLA interference based on Defendant's alleged misrepresentations of her rights and responsibilities under the FMLA;

4. Count II (intentional infliction of emotional distress) is **DISMISSED WITH PREJUDICE** in its entirety;

5. Plaintiff **SHALL** have twenty (20) days to file any amended complaint that may be filed, addressing the concerns raised in the accompanying Memorandum Opinion; and

6. Defendant **MAY** thereafter file a new motion to dismiss or an answer to any amended complaint that may be filed, within the timelines established by the Federal Rules of Civil Procedure.

September ___5___, 2023

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE